# 公　证　书

## 中华人民共和国北京市西城第二公证处



中华人民共和国　）

北京　　　　　　　　）　　　　宣誓证言

董扬今日来到我面前，根据法律首先正式宣誓，证明并声明以下事项：

1. 我是中国对外翻译出版公司的一名正式翻译。

2. 本文随附证据 A 是由中国国际经济贸易仲裁委员会于 2007 年 6 月 25 日发布的关于青岛海信进出口有限公司诉 Progressive Telecom 有限公司的仲裁裁决的经核实副本。

3. 本文随附证据 B 是由中国国际经济贸易仲裁委员会于 2007 年 6 月 25 日发布的关于青岛海信进出口有限公司诉 Progressive Telecom 有限公司的仲裁裁决的真实、准确的英文译文。

4. 我证实，证据 B 是由中国国际经济贸易仲裁委员会于 2007 年 6 月 25 日发布的关于青岛海信进出口有限公司诉 Progressive Telecom 有限公司的仲裁裁决的真实、准确的英文译文。

宣誓证词完毕。

[宣誓人签名]:

董扬

于 2007 年 8 月 27 日在我面前宣誓并在我的见证下签名。

公证人

PEOPLES REPUBLIC OF CHINA      )
                               )      ss.
Beijing_____ )

    Now comes Dong Yang, being first duly sworn, according to law, deposes and says that:

1.     I am an official translator at China Translation & Publishing Corp.

2.     A certified copy of the Arbitral Award issued by the China International Economic and Trade Arbitration Commission on June 25, 2007, in favor of Qingdao Hisense Import & Export Co., Ltd. and against Progressive Telecom, Inc. is attached hereto as Exhibit A.

3.     A true and accurate English translation of the Arbitral Award issued by the China International Economic and Trade Arbitration Commission on June 25, 2007, in favor of Qingdao Hisense Import & Export Co., Ltd. and against Progressive Telecom, Inc. is attached hereto as Exhibit B.

4.     I certify that the Exhibit B is a true and accurate English translation of the Arbitral Award issued by the China International Economic and Trade Arbitration Commission on June 25, 2007, in favor of Qingdao Hisense Import & Export Co., Ltd. and against Progressive Telecom, Inc.

              FURTHER AFFIANT SAYETH NAUGHT.

[affiant's signature]: _____
                  Dong Yang

SWORN TO BEFORE ME and subscribed in my presence this __2__ day of August, 2007.

              _____
              NOTARY PUBLIC

# 中国国际经济贸易仲裁委员会
# 裁 决 书

申请人：青岛海信进出口有限公司

　　　　（HISENSE IMP. & EXP. CO., LTD.）

地　　址：中国山东省青岛市东海西路 17 号海信大厦 22 层

仲裁代理人：金杜律师事务所律师 何薇、邢科科、王亚西

被申请人：Progressive Telecom Inc.

地 —— 址：7308 N 5TH ST, MCALLEN TX 78504 USA

北京

二零零七年六月二十五日

# 裁 决 书

（2007）中国贸仲京裁字第 0293 号

　　中国国际经济贸易仲裁委员（原名中国国际贸易促进委员会对外贸易仲裁委员会，后更名为中国国际贸易促进委员会对外经济贸易仲裁委员会，后又改为现名，以下简称仲裁委员会）根据申请人青岛海信进出口有限公司（英文名：HISENSE IMP. & EXP. CO., LTD.，以下简称申请人）与被申请人 Progressive Telecom Inc.（以下简称被申请人）之间签署日期为 2005 年 1 月 1 日的、编号为 HSDA040902 的 Sales Distributor Agreement（以下简称本案合同或协议）中第 6 条关于仲裁的约定，以及申请人于 2006 年 10 月 30 日向仲裁委员会提交的仲裁申请书，受理了申请人与被申请人之间因执行上述合同而产生的手机销售合同争议仲裁案。案件编号为 G20060461 号。

　　本案仲裁程序适用仲裁委员会自 2005 年 5 月 1 日起施行的《中国国际经济贸易仲裁委员会仲裁规则》（以下简称仲裁规则）。

　　2006 年 12 月 5 日，仲裁委员会秘书局以特快专递方式分别向申请人和被申请人发出本案仲裁通知并附仲裁规则和仲裁委员会仲裁员名册，同时向被申请人附去申请人提交

1

的仲裁申请书及其附件，并提请被申请人在仲裁规则规定的期限内选定仲裁员、提交书面答辩意见及/或反请求。

国际特快专递查单显示：向被申请人寄送的上述文件已于2006年12月20日妥投。

申请人选定陈秉五先生为仲裁员。由于被申请人在仲裁规则规定的期限内未选定或委托仲裁委员会主任代为指定仲裁员，仲裁委员会主任根据仲裁规则的有关规定指定林文肯先生担任仲裁员。由于双方当事人在仲裁规则规定的期限内未就首席仲裁员的人选达成一致意见，仲裁委员会主任根据仲裁规则的有关规定指定宋学成先生担任本案首席仲裁员。上述三位仲裁员在分别签署接受指定声明书后，于2007年3月7日组成仲裁庭，共同审理本案。

2007年3月29日，仲裁庭经商仲裁委员会秘书局决定于2007年5月14日在北京开庭审理本案。

由于首席仲裁员宋学成先生本人向仲裁委员会提出因公务繁忙不能继续担任本案仲裁员，仲裁委员会主任于2007年4月9日根据仲裁规则的规定重新指定安红旗先生替换宋学成先生担任本案首席仲裁员，与申请人选定的仲裁员陈秉五先生和仲裁委员会主任代被申请人指定的林文肯先生继续共同审理本案。

2007年5月14日，仲裁庭在北京如期开庭审理本案。申请人委派仲裁代理人到庭。被申请人未委派代表或代理人

2

出席庭审，亦未事前向仲裁庭申明其不能到庭的理由，根据仲裁规则第 34 条的规定，仲裁庭对本案进行了缺席审理。庭审中，申请人结合其仲裁请求陈述了案件事实及其法律依据，向仲裁庭出示了其所提交证据的原件并回答了仲裁庭的询问。

庭后当日，仲裁委员会秘书局以（2007）中国贸仲京字第 005473 号函向被申请人通报了庭审情况，同时通知被申请人对本案如有评论意见（包括证据）或有再次开庭的要求应于收到该函之日起 5 日内书面提交至仲裁委员会。

在本案仲裁程序中，仲裁委员会秘书局向双方当事人寄送的所有文件均已有效送达。

在本案仲裁程序中，被申请人未提交任何案件材料。

本案现已审理终结。仲裁庭根据庭审时查明的事实和申请人提交的现有材料，经合议，作出本缺席裁决。

现将本案案情、仲裁庭意见和裁决结论分述如下：

## 一、案　情

2005 年 1 月 1 日，申请人与被申请人以传真方式订立 Sales Distributor Agreement，即协议，双方当事人在该协议中约定，申请人指定被申请人为申请人的商品在墨西哥销售的独家代理，被申请人代理销售的产品为海信牌

CP389CDMA 手机，在本协议有效期内，被申请人销售的手机不少于 7 万台；双方约定，被申请人应以传真或电子邮件的方式向申请人下达定单，申请人将形式发票传真给被申请人以确认定单，之后，申请人将按照形式发票安排生产；双方还约定，合同金额的 10%由被申请人电汇给申请人，其他 90%由被申请人在发货前向申请人开出信用证；申请人将货物运至被申请人指定的目的港，协议有效期自 2005 年 1 月至 2005年 9 月。

除上述外，双方还就保证、市场、培训等进行了约定。在协议附件 1 价格条款中，双方约定，被申请人销售的手机 7 万台，每台为价格 FOB 88 美元，在附件 2 中，双方就有关的采购计划进行了约定。

在上述协议签订后的 2005 年 6 月 18 日，被申请人以电子邮件的方式向申请人下达了定单。在该定单中，被申请人提出采购 CP389 手机 1 万台，单价 78 美元，总价 78 万美元。

2005 年 6 月 20 日，申请人向被申请人出具了形式发票，确认了被申请人下达的上述定单，并注明发票金额的 10%预付款由被申请人电汇给申请人，其他 90%在申请人发货后 30天由被申请人电汇给申请人。前述形式发票传真给了被申请人，被申请人未提出异议并向申请人支付了 10%的货款计78,000 美元。随后，申请人开始进行生产。2005 年 6 月 28日，双方传真签订了销售合同，双方在合同中除确认了前述

定单和形式发票的内容外，还约定申请人在 2005 年 9 月 30 日前将货物空运给被申请人。2005 年 9 月 30 日，双方又传真签订了新的合同，该合同号与 2005 年 6 月 28 日签订的合同编号相同，均为 MPD0105008 号，双方在该合同中将交货时间改为 2005 年 10 月 15 日之前，其他内容没有变化。

2005 年 10 月 13 日，申请人将货物空运至被申请人指定的目的港 HOUSTON。

2005 年 11 月至 12 月，申请人向被申请人发出电子邮件，催促被申请人按时支付 90%的货款；2005 年 11 月 17 日，被申请人以电子邮件回复申请人，在该邮件中，被申请人表示，本案合同项下的货物销售遇到困难，正在努力销售，但还未售出。2006 年 2 月 13 日，被申请人又发送电子邮件给申请人，在该邮件中，被申请人表示，其正在努力销售，并且一些客户已有购买意向，同时，被申请人提出希望再从申请人处购买产品。

但被申请人一直未向申请人支付本案合同项下 90%的货款计 702,000 美元。申请人遂向仲裁委员会提起仲裁，其仲裁请求为：

1、被申请人向申请人支付货款共计 702,000.00 美元；

2、被申请人向申请人赔偿因迟延支付货款给申请人造成的直接经济损失人民币 288,925.98 元；

3、被申请人承担申请人为提起仲裁而支付的律师费和

其他合理开支，并承担本案全部仲裁费用。

据申请人称：

申请人是中华人民共和国手机制造商，被申请人是一家在美国注册成立的手机经销商。2005 年 1 月 1 日，申请人与被申请人订立了协议，在协议中，约定双方合作的模式为由申请人向被申请人提供总计 70000 台 CP389 型号的手机，供被申请人在墨西哥境内销售。在协议框架下，双方将针对每一笔订单具体的采购型号、数量、价格签订具体的销售合同，交易应当以双方确认的销售合同为准。协议第 5 条约定，被申请人通过电子邮件或者传真的方式向申请人下达订单，再由申请人开出形式发票一并传真给被申请人确认，被申请人若在收到形式发票后 1 个工作日内未提出异议，申请人将依据形式发票安排生产。

2005 年 6 月 18 日，被申请人以电子邮件方式向申请人发出订单，要求订购 10000 台 CP389 手机，每台单价为 78 美元，货物总价为 78 万美元。2005 年 6 月 28 日，双方签订销售合同，确认手机型号为 CP389，数量 10000 台，价格为每台 78 美元，交货方式为 2005 年 9 月 30 日前空运，付款方式为下订单同时支付 10%的货款，下订单后 30 日内支付剩余90%的货款。2005 年 9 月 30 日，双方对 2005 年 6 月 28 日达成的销售合同进行修改，签署了新的销售合同，依据重新签署的销售合同，交货方式为 2005 年 10 月 15 日前空运，付

款条件为下订单同时支付 10%货款，装运后 30 日内电汇支付剩余 90%货款。2005 年 10 月 13 日，申请人按照合同的约定交付了 CP389 手机 1 万台，被申请人也支付了 10%的货款计 78,000 美元，但到 2005 年 11 月 13 日，付款期限届至，但被申请人并未按约定支付剩余的 90%货款。申请人从 2005 年 11 月 14 日开始多次去函催促被申请人支付余款，2005 年 11 月 17 日，被申请人回函表示正在寻找销售该批手机的分销商，希望能延迟支付货款，申请人在此之后又多次去函催款，并且表示愿意提供协助。

2006 年 2 月 3 日，被申请人回函表示，已经顺利与多位分销商达成销售该批手机的意向，并且希望继续从申请人处订购相应型号和数量的手机。申请人表示双方可以协商，但被申请人应当首先支付完毕上批订单的剩余货款。此后，被申请人没有再理会申请人提出的付款要求，至今也未支付剩余货款。

如上所述，申请人严格按照合同约定交付了品质合格的货物，已经履行完毕合同项下申请人的全部义务，被申请人对此并无异议。但被申请人却严重违反了合同约定，以种种借口故意拖欠货款近一年时间，给申请人的资金周转造成极大困难，严重违背了商业诚信。

## 二、仲裁庭意见

1、关于适用法律

仲裁庭注意到，申请人和被申请人未在协议和合同中就发生争议时所应适用的法律作出约定，因此，本案适用法律由仲裁庭决定。仲裁庭根据最密切联系原则认定，解决本案争议应当适用中华人民共和国法律。

2、关于协议和合同的效力

仲裁庭认为，申请人与被申请人于 2005 年 1 月 1 日签订的协议以及双方于 2005 年 9 月 30 日签订的该协议项下的合同是双方在平等自愿的基础上签订的，双方均具有签订协议和合同的主体资格，且协议和合同内容不违反中国法律、法规和国际公约的强制性规定并符合合同生效的一般要件，代表了双方的真实意思表示。因此，该协议及合同合法有效。在协议和合同履行过程中，双方也从未对协议和合同的有效性提出过质疑。故，仲裁庭认为，该协议和合同可以作为判定双方当事人权利、义务的依据。

3、关于欠款

仲裁庭注意到，申请人就自己的主张向仲裁庭提交了如下证据：

（1）双方于 2005 年 1 月 1 日传真签订的协议；

（2）被申请人于 2005 年 6 月 18 日向申请人以电子邮件下达的 1 万台手机的定单；

（3）申请人于 2005 年 6 月 20 日向被申请人出具并传真给被申请人的形式发票；

（4）2005 年 6 月 28 日和 9 月 30 日双方传真签订的合同；

（5）2005 年 10 月 13 日发货的空运单；

（6）2005 年 11 月至 2006 年 2 月双方往来的有关付款和销售的电子邮件；

除上述外，申请人未再向仲裁庭提交其他证据。

基于上述证据，仲裁庭认为：

（1）如上所述，仲裁庭已经认定本案协议和合同是有效的，对双方均具有约束力。因此，双方均应按照双方在协议和合同中的约定履行协议和合同。依据申请人提交的证据，仲裁庭注意到，申请人按照合同约定的程序确认了被申请人下达的定单并开始按照定单进行生产，2005 年 10 月 13 日，申请人将本案合同项下的货物空运给了被申请人，在双方的往来邮件中显示，被申请人收到了本案合同项下的货物，双方对此均无异议。虽然被申请人曾提出货物的质量问题，但被申请人并未就此向仲裁庭提交任何证据，因此，仲裁庭不予考虑。

（2）被申请人在下达定单时支付了本案合同项下 10% 的货款计 78,000 美元，申请人对此没有异议。但被申请人在收到货物 30 天后，即 2005 年 11 月 13 日至今仍未按照合

同的约定支付其他 90%的货款计 702,000 美元。双方往来的邮件显示，虽然被申请人收到货物后遇到销售困难，但仲裁庭认为，这并不构成被申请人拒绝付款的抗辩理由，被申请人的拒不付款的行为违反了协议和合同的约定，属违约行为，被申请人应就此承担违约责任。

（3）基于上述，仲裁庭认为，被申请人应当按照双方在协议和合同中的约定向申请人支付拖欠的 702,000 美元货款。仲裁庭支持申请人向被申请人索要 702,000 美元货款的仲裁请求。

4、关于利息

仲裁庭注意到，申请人在其仲裁请求中提出被申请人应向申请人赔偿迟延支付货款而给申请人造成的直接经济损失。在庭审中，申请人的解释是，请求中所指的直接经济损失就是被申请人迟延付款的利息。

仲裁庭认为，被申请人违反协议和合同的约定，迟延支付本案合同项下的货款 702,000 美元，长期占用申请人的资金，给申请人造成了巨大的损失。因此，申请人向被申请人索要利息的请求是合理的，被申请人应当向申请人支付上述拖欠的货款 702,000 美元自 2005 年 11 月 13 日至 2006 年 10 月 12 日按照 2005 年 11 月 13 日的外汇牌价 1 美元折合人民币 8.0847 元，并按照 5.58%的利率计算的利息计人民币 288,925.98 元。

仲裁庭支持申请人的该项仲裁请求。

5、关于律师费用

申请人要求被申请人负担其因本案已发生的律师费人民币2万元，为此，申请人向仲裁庭提交了有关证据。但仲裁庭注意到，该律师费的付款人不是申请人，而是中国出口信用保险公司。因此，仲裁庭认为，申请人提交的关于律师费的证据与本案无关，仲裁庭对申请人的该项仲裁请求无法予以支持。

6、关于仲裁费用的承担

仲裁庭认为，本案仲裁费用由申请人承担5%，由被申请人承担95%。

## 三、裁　决

——基于以上事实和理由，仲裁庭经合议裁决如下：——

1、被申请人向申请人支付拖欠的货款702,000美元。

2、被申请人向申请人赔偿损失人民币288,925.98元。

3、驳回申请人的其他仲裁请求。

4、本案仲裁费为人民币158,574元，由申请人承担5%，即人民币7,929元，由被申请人承担95%，即150,645元。由于上述仲裁费已与申请人向仲裁委员会预付的费用相冲抵，故被申请人应直接向申请人偿付申请人代其垫付的仲裁

费用人民币 150,645 元。

上述被申请人应支付给申请人的款项，被申请人应于本裁决书作出之日起 15 天内支付完毕。

本裁决为终局裁决，自作出之日起生效。

（此页无正文）

首席仲裁员：

仲　裁　员：

仲　裁　员：

二零零七年五月二十五日于北京

13

## Arbitral Award of China International

## Economic and Trade Arbitration Commission

Claimant:    Qingdao Hisense Import & Export Co., Ltd.

Address:    22F Hisense Tower, 17 West Donghai Road, Qingdao, Shangdong Province, China.

Attorneys at law: He Wei, Xing Keke and Wang Yaxi, lawyers from King & Wood Partners

Respondent:  Progressive Telecom Inc.

Address:    7308 N 5th ST, MCALLEN, TX 78504, USA



Beijing
June 25, 2007

## Arbitral Award

(2007) Zh. G. M. Zh. J. C. Zi No. 0293

China International Economic and Trade Arbitration Commission (The former Foreign Trade Arbitration Commission of China International Trade Promotion Commission, and then Foreign Economic and Trade Arbitration Committee of China International Trade Promotion Commission, and now the present Commission, hereinafter "CIETAC") accepted the case of arbitration on the dispute over the sale of mobile phones (with the case number of G20060461) between the Claimant and the Respondent arising from the performance of the Sales Distributor Agreement (No. HSDA040902, hereinafter the "Contract or Agreement of this case") dated January 1, 2005, which was entered into by and between Qingdao Hisense Import & Export Co., Ltd. (hereinafter the "Claimant") and Progressive Telecom Inc. (hereinafter the "Respondent"), based on the arbitration clause of Article 6 of the aforesaid Contract and the application filed by the Claimant for arbitration on October 30, 2006.

The arbitration procedures shall follow the Arbitration Rules of China International Economic and Trade Arbitration Commission (hereinafter the "Arbitration Rules"), which was promulgated as of May 1, 2005 by the CIETAC.

On December 5, 2006, CIETAC Secretariat sent by courier an arbitration notice on this case to the Claimant and Respondent respectively with the Arbitration Rules and the name list of arbitrators of CIETAC attached thereto; meanwhile, it sent to the Respondent, together with the notice, the Claimant's application for arbitration and the attachment thereto, requesting the Respondent to appoint an arbitrator within the time limit as set forth by the Arbitration Rules, and submit written opinions of argument and/or counter-claim.

As indicated in the inquiry for international express mails, the aforesaid documents sent to the Respondent had been posted on December 20, 2006.

The Claimant appointed Mr. Chen Binwu as the arbitrator. Since the Respondent failed to appoint or entrust the director of the CIETAC to appoint an arbitrator on its behalf within the time limit as set forth in the Arbitration Rules, the director of the CIETAC appointed Mr. Lin Wenken as the arbitrator according to the relevant provisions of the Arbitration Rules. As the Parties were unable to reach an agreement on the candidate for the presiding arbitrator within the time limit as specified in the Arbitration Rules, the director of the CIETAC appointed Mr. Song Xuecheng as the presiding arbitrator for this case according to the relevant provisions of the Arbitration Rules. The aforesaid three arbitrators formed an Arbitral Tribunal on March 7, 2007 to jointly hear this case after signing the statements on acceptance of the appointment respectively.

On March 29, 2007, the Arbitral Tribunal decided to hear this case openly in Beijing on May 14, 2007 after deliberation with the CIETAC Secretariat.

Since the presiding arbitrator Mr. Song Xuecheng told the Arbitration Commission that he was unable to continue to act as the arbitrator of this case as he was tied up by public affairs, the director of the CIETAC appointed Mr. An Hongqi as the presiding arbitrator of this case on April 9, 2007 to replace Mr. Song Xuecheng, and Mr An Hongqi continued the hearing of this case jointly with Mr. Chen Bingwu, the arbitrator appointed by the Claimant, and Mr. Lin Wenken, the arbitrator appointed by the director of the CIETAC on behalf of the Respondent.

On May 14, 2007, the Arbitral Tribunal heard this case openly in Beijing as scheduled. The Claimant appointed its attorney at law to appear in court. The Respondent did not appoint any representative or agent to appear in court, nor did it explain to the Arbitral Tribunal the reasons for its default in advance. According to Article 34 of the Arbitration Rules, the Arbitral Tribunal heard the case by default. At the hearing, the Claimant stated the facts of the case and its legal basis based on its arbitration claim and presented the originals of the evidences submitted by it to the Arbitral Tribunal and answered the questions thereof.

On the current day after the hearing, the CIETAC Secretariat circulated a report on the hearing to the Respondent through the letter (2007) Zh. G. M. Zh. J. Zi No.005473, and advised that the Respondent submit its comments (including evidences) on this case, if any, or request for rehearing, if any, to the CIETAC in writing within five (5) days after receipt of the letter.

During the arbitration procedures of this case, all the documents sent by the CIETAC Secretariat have been duly served to both Parties.

During the arbitration procedures of this case, no material of this case was submitted by the Respondent.

This case was now terminated after hearing. The Arbitral Tribunal made an award by default after private sitting of the arbitrators based on the findings of facts and the existing materials submitted by the Claimant.

We hereby make a brief account on the facts of the case, opinions of Arbitral Tribunal and the conclusions of the award respectively as follows:

## I.   Facts of the Case

On January 1, 2005, the Claimant and the Respondent entered into the Sales Distributor Agreement (i.e., the Agreement) by fax, in which both parties agreed that

the Claimant shall designate the Respondent as the exclusive agent for the sale of the Claimant's commodities in Mexico, the product sold by the Respondent as an agent was the Hisense Brand mobile phone of CP 389CDMA. During the term of this Agreement, the mobile phones sold by the Respondent shall be no less than 70,000 in quantity. The Parties agreed that the Respondent shall place a purchase order to the Claimant by fax or email, and the Claimant shall fax the pro forma invoice to the Respondent to confirm the order, then the Claimant shall arrange production based on the pro forma invoice. The Parties further agreed that the Respondent shall pay 10% of the Contract Price to the Claimant by wire transfer, and issue a letter of credit to the Claimant for the remaining 90% of the Contract Price before delivery of goods. The Claimant shall ship the goods to the port of destination designated by the Respondent. The valid term of the Agreement shall be from January 2005 to September 2005.

In addition, the Parties also reached an agreement on warranties, market, training, and etc. In the Price Terms of the Appendix I thereto, the Parties agreed that the number of mobile phones sold by the Respondent shall be 70,000 at FOB USD 88 per mobile phone; and the Parties also agreed on the Procurement Plan as set out in Appendix II thereto.

On June 18, 2005 after the execution of the aforesaid Agreement, the Respondent placed an order to the Claimant by email, in which the Respondent proposed to purchase 10,000 mobile phones of CP389 with the unit price of USD 78, and the total price was USD 780,000.

On June 20, 2005, the Claimant issued a pro forma invoice to the Respondent, which confirmed the aforesaid order placed by the Respondent and indicated that the advance payment of 10% of the invoice amount shall be paid to the Claimant by the Respondent through wire transfer and the remaining 90% of the amount shall be paid in the same manner after delivery of goods. The aforesaid pro forma invoice was faxed to the Respondent, who did not make any objection but paid 10% of the payment of the goods, which was USD 78,000. Afterwards, the Claimant began to carry out production. On June 28, 2005, the Parties signed the sales contract by fax and, in addition to confirming the contents of the aforesaid order and those of the pro forma invoice; they also agreed that the Claimant shall transport the goods by air to the Respondent before September 30, 2005. On September 30, 2005, the Parties signed a new contract by fax, the number of which was the same as that of the Contract signed on June 28, 2005, i.e., MPD0105008. The Parties made modification on the contract that the time for delivery of the goods shall be prior to October 15, 2005 with other contents unchanged.

On October 13, 2005, the Claimant transported the goods by air to Houston, the port of destination designated by the Respondent.

From November to December of 2005, the Claimant sent emails to the Respondent,

urging it to make the 90% payment for the goods as scheduled. On November 17, 2005, the Respondent replied to the Claimant by email that they encountered difficulties in the sale of goods under the Contract of this case and was trying hard to sell the goods, but the goods hadn't been sold out yet. On February 13, 2006, the Respondent sent another email to the Claimant, explaining that it was trying hard to sell the goods, and some customers had the intention to purchase them; meanwhile, it would like to purchase more products from the Claimant.

But the Respondent had not made the 90% payment of the goods under the Contract of this case, which was USD 702,000. The Claimant therefore filed this arbitration to the CIETAC, requesting that:

1.  The Respondent shall make the payment of the goods to the Claimant, which was USD 702,000;

2.  The Respondent shall compensate the Claimant for RMB 288,925.98 for the direct economic loss caused to the Claimant due to delay in payment.

3.  The Respondent shall bear the attorney fees and other reasonable expenses incurred by the Claimant for filing the arbitration, as well as all the arbitration fees of this case.

The Claimant alleged that: the Claimant was a mobile phone manufacturer of the People's Republic of China, and the Respondent was a mobile phone distributor registered and incorporated in the United States. On January 1, 2005, the Claimant entered into an agreement with the Respondent in which they agreed on the mode of cooperation that the Claimant shall provide 70,000 CP389 mobile phones in total for the Respondent to sell in Mexico. Under the framework of the Agreement, the Parties would sign a specific sales contract based on the purchase model, quantity and price of each order, and the transaction shall be based on the sales contract confirmed by the Parties. As provided in Article 5 of the Agreement, the Respondent shall place an order to the Claimant by email or fax, and then the Claimant shall issue a pro forma invoice and fax it to the Respondent for confirmation. If the Respondent did not raise any objection within one (1) business day after receipt of the pro forma invoice, the Claimant shall arrange production based on the pro forma invoice.

On June 18, 2005, the Respondent placed an order to the Claimant by email, requesting purchase of 10,000 CP389 mobile phones with the unit price of USD 78 and the total price the goods of USD 780,000. On June 28, 2005, the Parties signed a sales contract confirming that the model of the mobile phone is CP389, the quantity is 10,000, and the unit price is USD 78 US, the mode of delivery is airfreight before September 30, 2005, and the payment method is making 10% of the payment of the goods at the time of placing an order and making 90% of the remaining payment within thirty (30) days after the order was placed. On September 30, 2005, the Parties

made modifications on the sales contract dated June 28, 2005 and entered into a new sales contract based on which the mode of delivery shall be airfreight prior to October 15, 2005, and the payment method shall be to make 10% of the payment at the time of placing an order and the remaining 90% payment by wire transfer within thirty (30) days after the order was placed. On October 13, 2005, the Claimant delivered 10,000 CP389 mobile phones as agreed upon in the Contract, and the Respondent made the 10% of the payment of the goods, which was USD 78,000. However, as of the date when the payment was due on November 13, 2005, the Respondent did not make the remaining 90% of the payment of the goods as agreed upon. The Claimant has urged the Respondent to pay the remaining amount by sending letters for several times since November 14, 2005. On November 17, 2005, the Respondent replied that it was looking for distributors to sell the batch of mobile phones and wished to postpone the payment of the goods. Thereafter, the Claimant sent letters again for several times to urge the payment and offer to render assistance.

On February 3, 2006, the Respondent replied that it had concluded a letter of intent with several distributors for the sale of this batch of mobile phones and wished to continue its purchase of the mobile phones of the corresponding models and quantities from the Claimant. The Claimant expressed that both Parties may negotiate on this, but the Respondent shall first pay off the remaining amount for the batch of goods as set out in the previous order. Afterwards, the Respondent gave no reply to the request of the Claimant for payment and has not paid the remaining amount of the goods.

To sum up, the Claimant has delivered quality goods strictly in accordance with the stipulations of the Contract, and has already fulfilled all its obligations under the Contract, to which the Respondent did not raise any object. However, the Respondent seriously violated the provisions of the Contract and delayed in making payment of the goods for almost one year by various excuses, which resulted in great difficulties to the capital turnover of the Claimant, and seriously violated the commercial integrity.

## II. Opinions of the Arbitral Tribunal

1. Applicable Law

   The Arbitral Tribunal noticed that the Claimant and the Respondent did not reach any agreement on the applicable law for any dispute arising from the Agreement or Contract, therefore, the applicable law to this case shall be determined by the Arbitral Tribunal. The Arbitral Tribunal affirmed that the law of the People's Republic of China shall be applicable to settlement of disputes hereunder according to the most significant relationship principle.

2. Validity of the Agreement and the Contract

   The Arbitral Tribunal believed that the Claimant and the Respondent entered into the Agreement dated January 1, 2005 and the Contract thereunder dated September 30,

2005 on the basis of equality and voluntariness, both Parties had the qualification of the subject for entering into the Agreement and the Contract, and the contents of both the Agreement and the Contract did not violate any Chinese laws, regulations and mandatory provisions of any international conventions. In addition, the Agreement and the Contract complied with the general conditions for validity of a contract and showed the true intention of the Parties. Therefore, both the Agreement and the Contract were legal and valid. During the performance of the Agreement and the Contract, neither party has questioned the validity of either the Agreement or the Contract. In this connection, the Arbitral Tribunal held that the Agreement and the Contract may be taken as the basis for determining the rights and obligations of both Parties.

3. Balance Due

The Arbitral Tribunal noticed that the Claimant submitted the following evidences to the Arbitral Tribunal with respect to its statements of claim:

(1) The Agreement signed by the Parties by fax on January 1, 2005;
(2) The order for purchase of 10,000 mobile phones placed by the Respondent to the Claimant on June 18, 2005 by email;
(3) The pro forma invoice issued and faxed to the Respondent by the Claimant on June 20, 2005;
(4) The Contract signed by the Parties by fax on June 28, and September 30, 2005;
(5) The airway bill for delivery of goods on October 13, 2005; and
(6) The email correspondence between the Parties with respect to the payment and sale from December 2005 to February 2006.

The Claimant did not submit any other evidence to the Arbitral Tribunal other than the aforesaid evidences.

Based on the aforesaid evidences, the Arbitral Tribunal held that:

(1) Considering all of the above, the Arbitral Tribunal has determined that both the Agreement and the Contract in this case were effective and binding on both Parties. Therefore, the Parties shall perform the Agreement and the Contract pursuant to the provisions agreed upon by both Parties. According to the evidences submitted by the Claimant, the Arbitral Tribunal noticed that the Claimant confirmed the order placed by the Respondent according to the procedures agreed in the Contract and began to make production based on the purchase order. On October 13, 2005, the Claimant transported by air the goods under the Contract of this case to the Respondent. As indicated in the emails between the Parties, the Respondent had received the goods under the Contract of this case, to which neither party raised any objection. The Respondent had complained about the quality of the goods, but the Respondent did not submit any evidence to the Arbitral Tribunal with respect to it, therefore, the

Arbitral Tribunal will not take it into consideration.

(2) The Respondent made 10% of the payment (which was USD 78,000) of the goods under the Contract of this case at the time of placing the order, to which the Claimant did not raise any objection. However, the Respondent has not paid the remaining 90% of the payment of the goods (which was USD 702, 000) as agreed in the Contract by the thirtieth (30) day after receiving the goods, i.e. November 13, 2005. As indicated in the mails between the Parties, although the Respondent had difficulties in sales after receiving the goods, which, as held by the Arbitral Tribunal, did not constitute the grounds of arguments of the Respondent for refusing to make payment. The default in payment by the Respondent violated the stipulations of both the Agreement and the Contract, and constituted a breaching act, and the Respondent shall assume liabilities for such breach.

(3) Based on the aforesaid reasons, the Arbitral Tribunal held that the Respondent shall pay the Claimant the payment of the goods in arrears, which was USD 702,000 as agreed upon by the Parties in both the Agreement and the Contract. The Arbitral Tribunal supported the Claimant to claim for such payment.

4.  Interest

The Arbitral Tribunal noticed that the Claimant requested in its arbitration claim that the Respondent shall compensate the Claimant for the direct economic loss caused by the Respondent due to its delay in making payment. During the hearing of this case, the Claimant explained that the direct economic loss shall refer to the interest on the payment in arrears by the Respondent.

The Arbitral Tribunal held that the Respondent violated the provisions of both the Agreement and the Contract, and delayed in making payment of the goods under the Contract of this case, which was USD 702,000, and misappropriated the Claimant's capital for a long time, which resulted in huge loss to the Claimant. Therefore, the Claimant's request for charging interest against the Respondent was reasonable, and the Respondent shall pay the aforesaid payment in arrears, which was USD 702,000 from November 13, 2005 to October 12, 2006 based on the foreign exchange quotations on November 13, 2005, which was USD 1 for RMB 8.0847, and the interest of RMB 288,925.98 calculated by the rate of 5.58%.

The Arbitral Tribunal supported this arbitration claim of the Claimant.

5.  Attorney Fees

The Claimant requested that the Respondent bear the attorney fees of RMB 20,000 incurred by the Claimant in this case, and submitted relevant evidence to the Arbitration Tribunal. However, the Arbitral Tribunal noticed that the payer of the attorney fees was not the Claimant, but China Export Credit Insurance Company.

Therefore, and the Arbitral Tribunal held that the Claimant's evidence with respect to the attorney fees was irrelevant to this case. This claim of the Claimant could not be supported by the Arbitral Tribunal.

6.  Sharing of the Arbitration Fees

The Arbitral Tribunal held that the Claimant shall bear 5% of the arbitration fees of this case, and the Respondent shall bear 95% of the arbitration fees.

### III.  Award

Based on the above facts and reasons, the Arbitral Tribunal made the following award after private sitting of arbitrators:

1.  The Respondent shall pay the Claimant the payment of goods in arrears, i.e. USD 702, 000;

2.  The Respondent shall pay the Claimant RMB 288.925.98 for its losses;

3.  Other arbitration claims of the Claimant shall be rejected; and

4.  The arbitration fee for this case was RMB 158,574, among which the Claimant shall bear 5%, i.e. RMB 7,929, and the Respondent shall bear 95%, i.e. RMB 150,645. Since the aforesaid arbitration fees have been set off with the advance payment made by the Claimant to the CIETAC, the Respondent shall pay the Claimant directly for the arbitration fee of RMB 150,645 paid in advance by the Claimant on its behalf.

The aforesaid amount payable to the Claimant by the Respondent shall be paid off by the Respondent within fifteen (15) days from the date of this award.

This award shall be final and effective from the date when this award was made.

(No text below)

Presiding Arbitrator:  An Hongqi
Arbitrator:   Chen Bingwu
Arbitrator:   Lin Wenken

China International Economic and Trade Arbitration Commission
June 25, 2007, Beijing

CERTIFIED   TRANSLATION
CHINA TRANSLATION
&   PUBLISHING CORP
Tel 68002858    Fax:68002686

# 公　证　书

(2007)京西二证字第 11525 号

　　兹证明前面的中英文宣誓证言上中国对外翻译出版公司的翻译董扬（女，一九七二年五月十四日出生）的签字属实。

中华人民共和国北京市西城第二公证处

公　证　员　

二〇〇七年八月二十七日

XW05903732

# Notarial    Certificate

(Translation)

(2007)J.X.E.Z. Zi No.11525

This is to certify that the signature of Dong Yang (female, born on May 14, 1972), a translator at China Translation & Publishing Corp., affixed on the Affidavit attached hereto is found to be authentic.

Notary: Yan Yaqiang

Xicheng Second Notary Public Office

Beijing

The People's Republic of China

Aug. 27, 2007

XW05903733

# 公　　证　　书

(2007)京西二证字第 11526 号

　　兹证明前面的(2007)京西二证字第 11525 号《公证书》的英文译本内容与该公证书中文原本相符。

中华人民共和国北京市西城第二公证处

公　证　员　

二〇〇七年八月二十七日

ⅩⅥ05903734

# Notarial   Certificate
(Translation)

(2007)J.X.E.Z. Zi No.11526

This is to certify that the English translation of the Notarial Certificate (2007)J.X.E.Z. Zi No.11525 attached hereto is in conformity with the Chinese original.

Notary: Yan Yaqiang

Xicheng Second Notary Public Office

Beijing

The People's Republic of China

Aug. 27, 2007

XW05903735

认 字 第 0 7 1 8 - 2 0 0 5 - 0 0 1 号

兹 证 明 前 面 文 书 上 公 证 处 的 印 章 和

公 证 员　　　闫 雅 强　　　的 签 名（印 章）

民 共 和 国 外 交 部

一 等 秘 书

2 0 0 7 年 0 9 月 1 1 日

2 1 6 0 8 6 4

People's Republic of China)

Municipality of Beijing　）　ss:

Embassy of the United　）

States of America　　）

Jennifer Peterson

I, _____Vice Consul_____ , Consul/Vice Consul of the United

States of America in Beijing, the People's Republic of China, duly commissioned and qualified,

do hereby certify that ___Yang , Yinzi_____ , whose true signature and official

seal are, respectively, subscribed and affixed to the foregoing document, was on the

____11____ day of ____Sep_____ , 200_7___ , an officer of the

Ministry of Foreign Affairs of the People's Republic of China, duly commissioned

and qualified, to whose official acts faith and credit are due.

IN WITNESS WHEREOF I have hereunto set my hand and affixed the seal of the

Embassy of the United States of America in Beijing, the People's Republic of China this

____11____ day of ____Sep_____ , 200_7___

Jennifer Peterson
Vice Consul